## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE MEYER GROUP, LTD., | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 19-cv-1945 |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| JAMES M. RAYBORN | ) | |
| 4420 Hadfield Lane NW | ) | |
| Washington, DC 20007 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BROAD STREET REALTY, LLC | ) | |
| 1015 15th Street NW | ) | |
| Washington, DC 20005 | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## COMPLAINT

1.      This action arises out of Defendant James Rayborn's ("Rayborn") breach of his Independent Contractor Agreement ("ICA") with Plaintiff The Meyer Group, Ltd. ("Plaintiff" or "TMG") by collaborating with Defendant Broad Street Realty, LLC ("Broad Street") (together, the "Parties") to misappropriate TMG's client lists and to interfere with TMG's ongoing contracts and client relationships.

## PARTIES & JURISDICTION

2.      Plaintiff is a limited liability company registered in the District of Columbia and with its primary place of business in the District of Columbia.

3.      Defendant Jim Rayborn is an individual residing in the District of Columbia.

4.      Defendant Broad Street Realty, LLC is a limited liability company with its primary place of business in Bethesda, Maryland and an office in the District of Columbia. Upon information and belief, Broad Street is registered under the laws of Maryland.

5.      This Court has jurisdiction under 28 U.S.C. § 1331, because this action raises issues arising under the laws of the United States.

6.      Venue is proper in this judicial district because the Parties all reside and conduct business in the District of Columbia.

## FACTUAL BACKGROUND

7.      TMG is a commercial real estate company providing brokerage and advisory services to tenants in the Washington, D.C. metropolitan area.  TMG's customary tenant services include market research, site evaluation, construction oversight, and lease negotiations.

8.      Rayborn is a real estate salesperson specializing in tenant representation in downtown Washington, D.C. and is currently working as a senior vice president at Broad Street.

9.      Rayborn worked with TMG in various capacities from 1994 until January 2019.

10.     Broad Street is a commercial real estate company providing brokerage and advisory services to tenants and landlords in the Mid-Atlantic region (including the Washington, D.C. metropolitan area), Colorado, and Paris.

11.     Rayborn started working with TMG in or around 1994.  During the course of Rayborn's relationship with TMG, Rayborn began to ignore directives from William Meyer ("Meyer"), the president of TMG, and to engage in disruptive behavior.  Rayborn also damaged TMG's relationships with clients by, among other questionable conduct, harassing and ceaselessly calling and emailing clients.  In or around May 2018, Rayborn was terminated for cause.

12.     Following his termination,n Rayborn asked Meyer to reinstate his relationship with TMG.  Rayborn insisted that he had spent his entire career working with TMG and could not envision himself elsewhere.  Upon information and belief, Rayborn sought to be reinstated in order to gain access to TMG's Confidential Information (as defined below in Paragraph 14).  TMG acquiesced to Rayborn's pleas to be reinstated and, on May 29, 2018, TMG and Rayborn entered into the ICA.  Pursuant to the ICA, TMG engaged Rayborn as an independent contractor to assist (a) TMG in the acquisition of new clients and, (b) TMG's current clients in locating premises and negotiating lease agreements.  In exchange, TMG agreed to pay Rayborn seventy-five percent of any commissions paid to TMG, net of any attorney fees or other expenses.

13.     Under Section 4 of the ICA, TMG and Rayborn could terminate the Agreement at any time upon immediate notice to the non-terminating party.

14.     Section 6 of the ICA included confidentiality provisions.  Under this section of the Agreement, Rayborn recognized and acknowledged that TMG would be granting Rayborn access to confidential or proprietary information, including information concerning TMG's clients and prospective clients, the identity of clients and prospective customers, the identity of key purchasing personnel in the employ of customers and prospective clients, and client lists (collectively, the "Confidential Information").

15.     Because Rayborn acknowledged that the Confidential Information was the property of TMG and that the misappropriation or disclosure of the Confidential Information could cause irreparable injury to TMG, he agreed under Section 6 to (a) not disclose the Confidential Information to others, (b) abstain from soliciting any client or potential client of TMG, and (c) turn over any Confidential Information prior to termination of the ICA.

16.    The Confidential Information included, among other things, TMG's client lists and contact information for clients and prospective clients that are not publicly disclosed and that derive actual and/or potential economic value from not being generally known to or being readily ascertainable by other real estate agents or commercial real estate companies who could gain economic value from the use or disclosure of the Confidential Information.

17.    TMG's Confidential Information included a Microsoft database containing information on past transactions with clients.  This database included information and data on each client such as the date of lease expiration, notes on client preferences, and up-to-date contacts at each client company.  TMG's Confidential Information also included a set of TMG index cards where Rayborn recorded client information including client contact information.

18.    TMG took all reasonable efforts and precautions to maintain the confidentiality of its Confidential Information, including, but not limited to, the confidentiality provisions set forth in the ICA.

19.    In or around January 2019, TMG learned that Rayborn was corresponding with competing real estate companies, including Broad Street, about employment opportunities. Meyer contact Rayborn and asked if Rayborn intended to continue working with TMG under the terms of the ICA.  Rayborn indicated that he intended to seek employment elsewhere.  On January 24, 2019, TMG notified Rayborn that the ICA was terminated.

20.    Shortly after the ICA was terminated, Rayborn began working at Broad Street.

21.    Immediately after Rayborn's departure from TMG, TMG discovered that Rayborn had taken a substantial number of index cards containing TMG's Confidential Information.  A few weeks later, TMG first discovered that Rayborn had disclosed and misappropriated TMG's

Confidential Information by contacting and actively soliciting TMG's clients while working at

Broad Street.  For example:

    a)  Integral LLC ("Integral") had been a longtime client of TMG for over a decade.

        In January 2019, while still licensed at TMG, Rayborn corresponded with Integral

        about finding new office space and made an appointment to show Integral new

        office space.  On or around January 22, 2019, Rayborn emailed several colleagues

        at TMG to notify them that Integral had agreed to a new leasing agreement.  On

        or around January 25, 2019, the day after the ICA was terminated, Rayborn began

        working with Broad Street to pursue and close the deal with Integral.  Upon

        information and belief, Integral ultimately signed a leasing agreement with

        Rayborn and Broad Street.

    b)  Barnes Vanze Architects, Inc. ("Barnes Vanze") was a client of TMG for over 8

        years.  On February 25, 2019, Barnes Vanze notified TMG that it was terminating

        its exclusive agreement with TMG and would instead be working with Broad

        Street.

    c)  FHL Banks had an exclusive agreement with TMG.  In or around December

        2018, while still licensed at TMG, Rayborn began discussing potential leasing

        options with FHL Banks.  On or around February 14, 2019, FHLB notified TMG

        that it was terminating its exclusive agreement with TMG.  Upon information and

        belief, FHL Banks is now working with Rayborn and Broad Street.

    d)  Republican Governors Association ("RGA") was a client of TMG for over 10

        years.  In or around November 2018, while still licensed at TMG, Rayborn

        corresponded with RGA regarding the negotiation of a sublease listing agreement.

On or around March 13, 2018, RGA notified TMG that it no longer wanted to use TMG's services to negotiate the sublease listing agreement.  Upon information and belief, RGA is now working with Rayborn and Broad Street.

e)   The National Emergency Number Association ("NENA") was a client of TMG for over 8 years.  On or around January 3, 2019, Rayborn, while still licensed at TMG, contacted NENA to discuss lease negotiations that would take place in late February 2019.  On or around March 17, 2019, NENA notified TMG that it was terminating its exclusive agreement with TMG.  Upon information and belief, NENA is now working with Rayborn and Broad Street.

f)   Capital Performance Group, LLC ("CPG") was a client of TMG for over 7 years. On or around January 16, 2019, Rayborn, while stil licensed at TMG, emailed CPG to discuss leasing options.  On or around January 25, 2019, after the ICA was terminated, Rayborn scheduled a meeting with CPG using his TMG email address to discuss options for new office spaces.  In or around February 2019, CPG ultimately signed a leasing agreement with Rayborn and Broad Street.

g)   In or around March 2019, Rayborn contacted Bertram Law Group, PLLC ("Bertram"), another longtime, loyal client of TMG, falsely represented to Bertram that he was still working with TMG, and requested a meeting to discuss potential relocation plans.  At an in-person meeting with Bertram, Rayborn distributed Broad Street promotional materials, despite previously representing himself as a TMG agent.  Rayborn requested a copy of Bertram's lease and subsequently called and emailed Bertram multiple times in an attempt to convince the client to cease its relationship with TMG and enter into a brokerage agreement

with Rayborn and Broad Street. Though Bertram declined to terminate its

relationship with TMG, it is assumed that Rayborn may have contacted and

persuaded other TMG clients to cut ties with TMG and to utilize Broad Street as

its real estate broker instead.  Rayborn's efforts may have caused immeasurable

damage to TMG's client relationships and long-term business prospects.

22.     On April 26, 2019, TMG, through its counsel, sent a cease and desist letter to

Broad Street, demanding that Broad Street cease using TMG's Confidential Information and

contacting TMG's clients and potential clients.  Broad Street blatantly refused to comply with

TMG's demand, claiming that it was unable to refrain from using TMG's Confidential

Information unless TMG provided an entire list of all TMG's clients and potential clients. TMG

refused to provide its Confidential Information to Broad Street.

23.     Upon information and belief, Broad Street and Rayborn continue to utilize TMG's

Confidential Information by contacting and soliciting TMG's clients and prospective clients.

## COUNT I – BREACH OF CONTRACT
### (Against Defendant Rayborn)

24.     Plaintiff realleges and incorporates the allegations set forth in the above

paragraphs in this complaint as though fully set forth herein.

25.     The ICA between Rayborn and TMG is an express, written contract.

26.     TMG performed its obligations under the ICA, until the Agreement was

terminated on January 24, 2019.

27.     Rayborn breached the terms of the ICA by misappropriating and disclosing

confidential and proprietary information concerning TMG's clients and prospective clients and

actively soliciting clients and potential clients of TMG.  Rayburn's breach of the ICA has

caused, and will continue to cause, TMG to suffer damages.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Defendants Rayborn and Broad Street)

28.     Plaintiff realleges and incorporates the allegations set forth in the above paragraphs in this complaint as though fully set forth herein.

29.     TMG had a valid contract with clients Integral, Barnes Vanze, FHL Banks, RGA, NENA and CPG (collectively, the "TMG Clients").

30.     Rayborn and Broad Street knew that TMG had valid contracts with the TMG Clients.

31.     Rayborn and Broad Street intentionally interfered with the contracts between TMG and the TMG Clients by actively soliciting Clients and encouraging the TMG Clients to terminate their contracts with TMG.

32.     As a direct cause of Rayborn's and Broad Street's interference, the TMG Clients terminated their contracts with TMG and/or discontinued their business relationships with TMG.

33.     TMG has suffered damages as a direct cause of Rayborn and Broad Street's tortious interference with its contracts with Clients.

## COUNT III – DC UNIFORM TRADE SECRETS ACT
### (Against Defendants Rayborn and Broad Street)

34.     Plaintiff realleges and incorporates the allegations set forth in the above paragraphs in this complaint as though fully set forth herein.

35.     TMG's Confidential Information derives independent economic value because it is not generally known and not readily ascertainable by another person who could gain economic value from its disclosure or use.

36.     TMG undertook reasonable efforts to maintain the secrecy of its Confidential Information.

37.     Rayborn and Broad Street willfully and maliciously misappropriated TMG's Confidential Information by acquiring and disclosing the Confidential Information.  Broad Street acquired the Confidential Information through improper means by and through Rayborn who breached his confidentiality obligations under the ICA.  Rayborn acquired the Confidential Information under circumstances giving rise to a duty to maintain its secrecy and to limit and restrict its use.

38.     Rayborn and Broad Street disclosed the Confidential Information knowing that Broad Street had acquired it through improper means and that Rayborn had acquired it under circumstances giving rise to confidentiality obligations.

39.     TMG has suffered, and will continue to suffer, damages as a direct result of the misappropriation of its Confidential Information, because the disclosure of the Confidential Information caused TMG Clients to terminate its business relationships and contracts with TMG.

40.     Rayborn and Broad Street were unjustly enriched by misappropriating the Confidential Information, because the disclosure of the Confidential Information caused TMG Clients to enter into business relationships and contracts with Rayborn and Broad Street and/or to discontinue its business relationships and/or contracts with TMG.

**COUNT IV – DEFEND TRADE SECRETS ACT**
**18 U.S.C. § 1836, et seq.**
**(Against Rayborn and Broad Street)**

41.     Plaintiff realleges and incorporates the allegations set forth in the above paragraphs in this complaint as though fully set forth herein.

42.     TMG's Confidential Information is related to a product or service used, or intended for use, in interstate commerce.

43.     TMG's Confidential Information derives independent economic value because it is not generally known and not readily ascertainable by another person who could gain economic value from its disclosure or use.

44.     TMG undertook reasonable efforts to maintain the secrecy of its Confidential Information.

45.     Rayborn and Broad Street willfully and maliciously misappropriated TMG's Confidential Information by acquiring and disclosing the Confidential Information.  Broad Street acquired the Confidential Information through improper means by and through Rayborn who breached his confidentiality obligations under the ICA.  Rayborn acquired the Confidential Information under circumstances giving rise to a duty to maintain its secrecy and limit its use.

46.     Rayborn and Broad Street disclosed the Confidential Information knowing that Broad Street had acquired it through improper means and that Rayborn had acquired it under circumstances giving rise to confidentiality obligations.

47.     Rayborn and Broad Street misappropriated the Confidential Information for their own economic benefit, knowing that it would injure TMG.

48.     TMG has suffered, and will continue to suffer, damages as a direct result of the misappropriation of its Confidential Information, because the disclosure of the Confidential Information caused Clients to terminate their business relationships and/or contracts with TMG.

49.     Rayborn and Broad Street were unjustly enriched by misappropriating the Confidential Information, because the disclosure of the Confidential Information caused Clients to enter into business relationships and contracts with Rayborn and Broad Street.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

A.      Enter a judgment against the Defendants in favor of Plaintiff;

B.      Award Plaintiff compensatory damages in an amount to be proven at trial, together with pre- and post-judgment interest;

C.      Award Plaintiff exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and DC Code § 36-403(b), in an amount to be proven at trial, together with pre-and post-judgment interest;

D.      Award Plaintiff its attorneys' fees and litigation costs, to be paid by Defendants in accordance with Section 9 of the ICA and in accordance with 18 U.S.C. § 1836(b)(3)(D) and DC Code § 36-404(3); and

E.      Award Plaintiff such other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**AEGIS LAW GROUP LLP**

By:      /s/ *Michael K. Ross*
         Michael K. Ross
         T. Esther Silberstein
         801 Pennsylvania Ave., N.W.
         Suite 740
         Washington, DC 20004
         Tel: (202) 737-3500
         Fax: (202) 737-3330
         mross@aegislawgroup.com
         esilberstein@aegislawgroup.com

**ALBERT & SCHULWOLF, LLC**

By:      s/ *Andrew B. Schulwolf*
Andrew B. Schulwolf
110 North Washington Street
Suite 300
Rockville, Maryland 20850
Tel: (301) 519-1919
Fax: (301) 519-9222
andrew@albertandschulwolf.com

*Attorneys for Plaintiff*

Date: June 28, 2019